# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEISHA LLC d/b/a JAPONAIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 5529 |
| | ) |
| ROY TUCCILLO, an individual, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Geisha LLC ("Geisha") operates the restaurant "Japonais" in Chicago, which opened to critical acclaim in 2003. Geisha did not at that time seek to register the stylized version of its restaurant name that is now at the center of this lawsuit. The following year, Defendant Roy Tuccillo did file an application with the United States Patent and Trademark Office ("USPTO"), stating his intent to use a mark, essentially identical to the one used by Plaintiff, when starting his own restaurant and lounge in New York. Plaintiff did not learn of this application until the period to formally oppose it had expired in 2005, but Plaintiff nevertheless went forward with expanding its own restaurant operations by adding a location on the Las Vegas strip and another in Manhattan in 2006. In September 2005, Plaintiff brought this suit against Tuccillo, claiming that Tuccillo has violated its rights in the disputed mark. In 2008, Tuccillo opened a restaurant that employed the mark in question, prompting Plaintiff to seek summary judgment on its claim for false designation of origin under 15 U.S.C. § 1125(a). For the following reasons, Plaintiff's motion is denied.

## FACTUAL BACKGROUND

In December 2001, Geisha LLC was formed to design and operate a "modern European/Japanese fusion restaurant and lounge" in Chicago, Illinois. (Pl.'s 56.1 ¶ 9.) Geisha selected the name "Japonais" (French for "Japanese") as the name for its restaurant.[1] (*Id.*) In early

---

[1] Throughout his response, Defendant maintains that, "pursuant to Rule 56(f), defendant does not have information to fully respond to this statement." (*E.g.* Resp. to Pl.'s 56.1

2003, Geisha adopted a design for its name that presented "JAPONAIS" in all capital letters, with inverted V's substituted for the A's.[2] (*Id.* ¶ 10.) On September 23, 2003, Geisha opened its restaurant in downtown Chicago, using the stylized JAPONAIS mark throughout the restaurant. (*Id.* ¶ 11.) After the opening, Japonais received extensive press coverage both locally and nationally, including an article in *Bon Appetit* magazine in January 2004; an article naming Japonais one of the "66 Best New Restaurants in the World" in the May 2004 issue of *Conde Nast Traveler*; and an article in *Time* magazine about one of the restaurant's desserts on June 14, 2004. (*Id.* ¶¶ 15-16.)

Roy Tuccillo operates Anchor Frozen Foods, a frozen seafood supplier in New York. (*Id.* ¶ 3.) Nine months after Japonais opened its doors in Chicago, and less than two weeks after the article in *Time* magazine, Tuccillo filed a trademark application with the USPTO on June 25, 2004. (*Id.* ¶ 19.) Tuccillo's application was an "intent-to-use" ("ITU") application because he had not yet actually used the mark in commerce. Federal trademark law allows an individual to file such an application if he "has a *bona fide* intention, under circumstances showing the good faith of such person, to use [the] trademark in commerce." 15 U.S.C. § 1051(b). If no party successfully opposes an ITU application in a USPTO proceeding, the applicant will be issued a "notice of allowance." *Id.* § 1063(b)(2). Before the mark will actually register, however, the individual filing an ITU application must make actual use of the mark in commerce. *Id.* § 1051(c). Generally, the applicant has six months after receiving the notice of allowance to use the mark in commerce and file a "statement of use" with the USPTO, although the applicant may receive an extension of time

---

¶¶ 1, 9-20.) Plaintiff also invokes Rule 56(f) in one of his responses. (Resp. to Def.'s 56.1 ¶ 34.) Rule 56(f) requires the party opposing a motion for summary judgment to present an affidavit that specifies why the party is unable to "present facts essential to justify its opposition." FED. R. CIV. P. 56(f). Tuccillo did not file such an affidavit, and the court thus ignores the repeated references to Rule 56(f).

[2] In this opinion, the court will use the word "Japonais" to refer to the restaurants themselves, and will use the capitalized "JAPONAIS" to refer to the disputed mark.

for various reasons. *Id.* § 1051(d); 37 C.F.R. § 2.89. After the mark registers, the registrant will be treated as though he began using the mark on the date he filed the ITU application (the "constructive use" date"); if the registrant had not filed an ITU application and simply registered the trademark after using it in commerce, the registrant would only have nationwide rights to enforce the mark against others as of the date of registration (the "constructive notice" date). 15 U.S.C. §§ 1057(c), 1072.

In his ITU application, Tuccillo claimed a *bona fide* intent to use the JAPONAIS mark in connection with restaurant and lounge services, swearing that, to the best of his knowledge, "no other person, firm, corporation, or association has the right to use said mark in commerce . . . when applied to [restaurant and lounge] services." (Pl.'s 56.1 ¶ 19.) Of all the references to Japonais that had been made in the media to that point, it appears that only three publications included a depiction of the JAPONAIS mark, and all three of these were advertisements in the Chicago market. (Def.'s 56.1 ¶ 33.) Tuccillo claims that he had been using the JAPONAIS mark—written in the same style, with inverted V's in place of the A's—on the window of a retail store since 2000 in connection with his sale of infused calamari.[3] (Tuccillo Dep. 39:19-24, Ex. C to Def.'s 56.1.)

Geisha did not learn of Tuccillo's application until September 2005, after the time period in which Geisha would have been able to oppose the application before the USPTO. (Pl.'s 56.1 ¶ 19.) Upon discovering Tuccillo's application, Geisha immediately notified Tuccillo's attorney of Geisha's interest in the JAPONAIS mark and provided over fifty pages of evidence documenting Geisha's prior use. (*Id.* ¶ 20.) Tuccillo replied that he intended to pursue his plan to use the JAPONAIS name and mark with a future restaurant and lounge. He received his notice of allowance from the

---

[3] One slight difference may exist between the two JAPONAIS marks: Geisha claims that its mark uses a unique font (Pl.'s 56.1 ¶ 10), but Tuccillo claims that he used Arial, a common font on word processors. (Tuccillo Dep. 44:15-19, Ex. C to Def.'s 56.1.) Neither party appears to believe this distinction is particularly relevant, and, as this court has noted in the past, it is not altogether clear that the marks actually use different fonts. *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1004 n.3 (N.D. Ill. 2007).

USPTO on August 23, 2005.  (*Id.*; Resp. to Interrogatories ¶ 2, Ex. B to Def.'s 56.1.)  Geisha then filed this action on September 26, 2005.  (Pl.'s 56.1 ¶ 20.)  The following year, Geisha opened two new Japonais restaurants, one in the Flatiron district in New York City, the other in the MGM Mirage Hotel and Casino in Las Vegas.[4]  (*Id.* ¶¶ 17-18.)  Both new restaurants use the stylized JAPONAIS mark throughout.  (*Id.*)

In its ten-count complaint against Tuccillo, Geisha alleges, as Count I, false designation of origin under 15 U.S.C. § 1125(a).  (Compl. ¶¶ 37-46.)  Tuccillo initially contended that there was no infringement because he had not actually used the JAPONAIS mark in the restaurant business, as his application only confirmed his intent to use it.  (Pl.'s 56.1 ¶ 21.)  In 2007, this court denied Geisha's motion for a declaratory judgment that Geisha possessed superior rights in the mark and that Tuccillo's intended use of the mark would constitute infringement.  *Geisha, LLC*, 525 F. Supp. at 1009.  The court observed that Tuccillo had not yet employed the mark and was not immediately threatening to do so.  *Id.* at 1013-14.  Tuccillo himself then sought summary judgment on Geisha's trademark claim, arguing that he could not have infringed any rights in the mark because he had not used the mark in commerce.  On May 2, 2008, however, while that motion was pending, Tuccillo filed a verified "statement of use" with the USPTO, swearing that he was using the mark in commerce in connection with restaurant and lounge services.[5]  (Pl.'s 56.1 ¶ 22.)  In this application, Tuccillo included a menu showing the JAPONAIS mark as well as a photo of the mark etched onto a window, presumably of his own restaurant.  (*Id.*)  Following this application, Tuccillo withdrew his

---

[4]  The New York and Las Vegas restaurants are run by different entities that are not comprised of all of the same members who founded Geisha LLC and the original Chicago restaurant.  *Segal v. Geisha NYC LLC*, 517 F.3d 501 (7th Cir. 2008).  As confirmed by the Seventh Circuit in another case, however, Geisha LLC owns the intellectual property of the enterprise, which is all that matters for purposes of this action.  *Id.* at 503.

[5]  The parties do not explain what accounts for the delay of nearly three years between Tuccillo's receipt of a notice of allowance and his filing of the statement of use.  Since Geisha does not here suggest that the delay has any effect on Tuccillo's registration, the court assumes, for the purposes of this motion, that the delay was permitted under the statute and regulations.

summary judgment motion, and Plaintiff moved for summary judgment on Count I, claiming that Tuccillo's conduct in registering and using the mark constituted false designation of origin.

**DISCUSSION**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In order to avoid summary judgment, Tuccillo "bears the burden of setting forth specific facts showing that there is a genuine issue for trial." *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (quoting *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998)) (internal quotation marks omitted). The facts are construed in favor of Tuccillo as the non-moving party, and he is given the benefit of all reasonable inferences. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009).

The first claimed use of the JAPONAIS mark was by Tuccillo in 2000, when he claims to have put it on the window of a retail store where his Anchor Frozen Foods products were sold. To support this claim, Tuccillo offers his own deposition testimony and an undated photo showing the mark on an unidentified window. (Tuccillo Dep. 58:14-16, Ex. C to Def.'s 56.1; Ex. D to *id.*) Though not overwhelming, this evidence at least creates a genuine issue as to whether, as of 2000, Tuccillo possessed some rights to use the stylized JAPONAIS mark in connection with the retail sale of seafood. The next use of the mark occurred in September 2003 in Chicago, when Geisha opened the Japonais restaurant. There is no dispute that Geisha retains the right to use the JAPONAIS mark for restaurant and lounge services in Chicago based on its 2003 use, which predates Tuccillo's filing of his ITU application. *See* 15 U.S.C. § 1065 (registration of a trademark does not affect the common law rights acquired by one who "use[d] a mark or trade name . . . prior to the date of registration"). It is similarly undisputed that Geisha did not attempt to register the JAPONAIS name or mark with the USPTO. Geisha nevertheless maintains that Tuccillo infringed Geisha's rights in the JAPONAIS mark when Tuccillo opened his restaurant in 2008.

5

As noted, Geisha refers to its claim as one of trademark infringement, but the action is actually brought under 15 U.S.C. § 1125(a), which prohibits individuals from using in commerce "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact;" the statute does not explicitly state that the plaintiff must possess a protectable mark. *Id.* Nevertheless, "it is clear that 'the defendants' use of a protected mark or their use of a misleading representation is a *prerequisite* to the finding of a [§ 1125] violation.'" *U-Haul Int'l, Inc. v. Kresch*, 943 F. Supp. 802 (E.D. Mich. 1996) (quoting *Holiday Inns, Inc. v. 800 Reservation, Inc.* 86 F.3d 619, 626 (6th Cir. 1996)); *see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 17:13 (4th ed. 2008) (hereinafter "McCarthy"). Geisha therefore must still establish that it possesses rights in the JAPONAIS mark that Tuccillo has infringed.

I. **Geisha's Rights Prior to June 25, 2004**

The court first considers whether Geisha already possessed rights in the JAPONAIS mark on June 25, 2004, the date on which Tuccillo filed his application. Geisha did not itself register the trademark, so Geisha is not entitled to the presumption of constructive notice provided by registration and must identify some other grounds for claiming that its rights extended beyond Chicago. *See* 15 U.S.C. § 1072. Here, as noted above, Geisha clearly had established rights in the JAPONAIS mark in Chicago, where the mark was used exclusively in conjunction with its restaurant; those rights did not, however, necessarily extend to markets that Geisha had not yet entered as of June 2004. *See Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916). The general rule is that a junior user who is unaware of the senior user's use may adopt a mark in a geographically distinct area, provided that the mark has not been registered. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 200 (1985); *see also Hanover Star Milling Co.*, 240 U.S. at 415 (1916) ("where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of

6

prior appropriation is legally insignificant").

An important exception to this rule recognizes that a party may possess rights in a mark by virtue of a reputation that extends beyond the immediate geographic area where the mark is employed. *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001) (use of a mark since the 1950s by a "diversified, multinational company with thousands of employees and twenty subsidiaries" establishes strong rights possessed by the plaintiff in that mark); *see also Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc.*, 370 F. Supp. 1030 (S.D. Ill. 1974). In *Steak & Brew*, a restaurant chain named "Steak & Brew" opened a location in Peoria, Illinois, and advertised primarily in that region, though it did place one advertisement in a national magazine soliciting franchisees. *Id.* at 1033. Approximately nine months after the location opened in Peoria, a new restaurant named "Beef & Brew" opened in Rock Island, Illinois, less than 100 miles from Peoria, though in a different advertising region. *Id.* at 1034. After a bench trial, the court concluded that the defendant was unaware of plaintiff's restaurant when it opened its Rock Island restaurant, based both on the testimony of Beef & Brew's owner that he possessed no such knowledge and on Steak & Brew's geographically limited advertising to that point. *Id.* at 1036-37.

Many of the factors in *Steak & Brew* that counseled against finding that plaintiff's reputation extended beyond its immediate geographic area are also present here. By June 2004, most of Japonais's publicity had been in the Chicago media and in trade publications. As for the JAPONAIS mark itself, it appears that the mark was depicted in only five of the publications cited by Geisha, three of which were advertisements in Chicago-based publications, and two of which were published after Tuccillo filed his ITU application. (Def.'s 56.1 ¶ 33.) Although the national coverage of Japonais was more extensive than the national coverage of Steak & Brew, the distance between Chicago and New York is far greater than the distance between Peoria and Rock Island, and the ability of the restaurant's reputation to spread that far is a question of fact that is not conclusively answered by the record. In fact, the nine-month period between the opening of the

Chicago restaurant and Tuccillo's filing the ITU application is the same length as the time period between the opening of the Steak & Brew and the Beef & Brew; the *Steak & Brew* court concluded that during that "critical period," the Peoria restaurant "was unknown in the [Rock Island] area," making it impossible for that court to conclude that the latter restaurant was attempting to pass itself off as the former. *Steak & Brew*, 370 F. Supp. at 1037; *cf. Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (finding that a six-year period of using the mark and building a reputation favor a finding of trademark infringement against defendant who operated restaurant in a different Chicago neighborhood). The court thus cannot conclude, as a matter of law, that the JAPONAIS mark had obtained such wide-spread notoriety by 2004 that Geisha possessed common law rights in the mark in New York.

## II.     Geisha's Rights Prior to May 2, 2008

Nor does Geisha's expansion to New York and Las Vegas create enforceable trademark rights in New York that Tuccillo violated by opening his restaurant. In the absence of an intent-to-use application, a senior user (like Geisha) who expands into new markets *would* be able to claim enforceable rights against a junior user (Tuccillo) who enters the market after the expansion, even if the senior user does not register the mark. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 510 (7th Cir. 1992). Here, however, the junior user did file an intent-to-use application. The filing of an intent-to-use application does not constitute registration; the mark will not be registered until after the party begins to use that mark. 15 U.S.C. § 1051(c). As discussed above, the advantage to filing an intent-to-use application—like the one filed by Tuccillo—is that, if the party who has filed such an application begins using the mark in commerce during the statutory period, the mark will be registered and the date the intent-to-use application was filed will be deemed to be the effective date of use. *See id.* § 1057(c). Any party that began using the mark after the intent-to-use application was filed will be treated as a junior user *vis a vis* the applicant/registrant. *See id.* In the absence of an intent-to-use application, other users are deemed to have notice of the registrant's

8

nationwide rights in the mark only after the date of registration.  *See id.* § 1072.

Thus, the critical distinction in this case is between constructive *use* and constructive *notice*. Constructive notice, obtained when a mark is actually registered on the principal registry, prevents further use of the mark by others.  *Id.* § 1072.  Even senior users may be restricted to the areas they operated in at the time of registration.  *See id.* § 1065.  Constructive use, by contrast, prevents a third party from acquiring any rights in the trademark as of the date the intent-to-use application was filed.  *Id.* § 1057(c).  Under this doctrine, Tuccillo will have a constructive use date of June 25, 2004, the date he filed the ITU application.  Constructive use is subject to two important limitations that are relevant here: first, constructive use is contingent upon actual registration of the mark,  and second, constructive use does not bar use of the mark by senior users.  There is some uncertainty about the application of each of these principles in this case, as discussed below, but the court concludes that Geisha is not entitled to judgment as a matter of law on its false designation of origin claim.

In reaching this conclusion, the court acknowledges, first, that the entire concept of constructive use is contingent upon the actual registration of the mark, which has not yet occurred. *Id.*  Geisha failed to file a timely opposition to Tuccillo's mark, however, *see* 15 U.S.C. § 1063, and Geisha admits that the mark will inevitably be registered.  (Geisha LLC's Mot. for L.R. 78.5 [112] at 2 n.2.)  This creates something of a legal limbo regarding the scope of Tuccillo's rights now, after the application has been filed but before the registration has yet issued.  As one commentator has noted, "Because constructive use priority is contingent upon registration, there is some question as to the priority rights of an intent-to-use (ITU) applicant who has not yet received a registration. Such a party has merely a contingent and conditional priority."  5 McCarthy § 26:38.  The court is not required in this case to precisely delineate the scope of such an applicant's rights; it is sufficient to hold, as the court does, that given Tuccillo's pending registration of the JAPONAIS mark, Tuccillo could not have violated Geisha's rights in the mark in New York unless Geisha possessed common

law rights in New York prior to the constructive use date of June 25, 2004. As noted above, the extent of Geisha's common law rights is a contested issue of material fact that precludes summary judgment. When confronted with a similar question, the Second Circuit held that a plaintiff who began using the mark in question after the defendant had filed an ITU application was not entitled to an injunction because the ITU applicant was permitted "to assert the ITU filing as a defense to [Plaintiff]'s efforts to prevent it from completing the ITU registration process." *WarnerVision Entertainment Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996); *accord Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 18 (D.C. Cir. 2008) ("We conclude that . . . an intent-to-use applicant prevails over any opposer who began using a similar mark after the intent-to-use filing date.").

The court acknowledges, further, that the "constructive use" doctrine ordinarily does not preclude use of the mark by a senior user. 15 U.S.C. § 1057(c)(1). The court concludes, however, that this exception does not require judgment in favor of Geisha in the circumstances of this case. Ordinarily, the territory in which the senior user is entitled to use the mark will be frozen as of the date of *registration* by the junior user, rather than the date of the junior user's ITU *application*; in other words, the senior user is subject only to the restrictions of constructive notice. *Allard Enterprises, Inc. v. Advanced Programing Resources, Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) (citing 5 McCarthy § 26:40). The rationale for this exception is that a prior user should not be prevented from expansion because of the filing of an ITU application of which the senior user has no notice; but registration still "creates *constructive* notice which ends the possibility of good faith expansion." 5 McCarthy § 26:40 (emphasis added). This rationale does not apply here, however, because Geisha had *actual* notice of Tuccillo's pending application prior to Geisha's expansion. If *constructive* notice that Tuccillo possesses rights in the mark bars Geisha from expanding its use of the mark, surely Geisha is under similar constraints where it has *actual* notice of Tuccillo's application. This outcome finds ample support in the policy of the trademark laws to encourage

10

registration. The trademark laws reward the first users of a valuable trademark who register that mark. *See Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 523 (C.C.P.A. 1980). On the other hand,

> where the prior user does *not* apply for a registration before registration is granted to another, there may be valid grounds, based on a policy of rewarding those who first seek federal registration, and a consideration of the rights created by the existing registration, for limiting his registration to the area of actual use and permitting the prior registrant to retain the nationwide protection of the act restricted only by the territory of the prior user.

*In re Beatrice Foods Co.*, 429 F.2d 466, 474 n.13 (C.C.P.A. 1970) (emphasis added); *see also* 3 McCarthy § 19:29 ("Allowing the post-application user . . . to obtain an injunction would also be contrary to the policy of encouraging and rewarding the early filing of applications . . . ."). Despite a very successful opening in 2003 of its flagship restaurant, Geisha failed to register its trademark. It would be inequitable to hold Tuccillo in violation of Geisha's trademark rights in these circumstances. Geisha did not operate in New York prior to Tuccillo's filing the ITU application, in which Tuccillo swore he had a *bona fide* intention to use the mark in the restaurant and lounge industry and that he had no knowledge of any other use of that mark in the industry. This conclusion is bolstered by the fact that Tuccillo claims prior use of the stylized mark in his frozen seafood retail business; accordingly, this does not appear to be a case of an individual taking advantage of another party's failure to register a trademark and squatting on that mark to sell to the larger (but unregistered) user.

The facts of this case lie between two relatively easy cases. On the one hand, if Geisha had first begun operations after June 2004, it would be a junior user whose rights would be subordinate to Tuccillo's rights once his trademark registered, because Tuccillo would have a June 2004 constructive use date. 5 McCarthy § 26:38 ("once a registration issues, the registrant has national priority [over a junior user] as of its application date"). On the other hand, if Tuccillo had filed his ITU application after Geisha had already expanded to New York, his restaurant would likely violate

11

Geisha's common law rights to the mark in New York, regardless of whatever rights he might be entitled to in the rest of the nation. 15 U.S.C. § 1057(c)(1). Geisha is the senior user here, but a genuine issue of material fact exists as to whether it had penetrated the New York market prior to Tuccillo's constructive use date (which is still technically pending actual registration). On this motion for summary judgment, the court must draw the reasonable inference that Geisha had not penetrated the New York market. *Nagle*, 554 F.3d at 1114. Thus, given Geisha's actual notice of Tuccillo's application, its rights would not be enforceable in New York against Tuccillo once Tuccillo's mark is registered. Tuccillo will then have a constructive use date of June 2004, two years before Geisha's use of the mark in New York. The mere fact that Tuccillo's registration has not been finalized—which both parties agree is a mere formality at this point—should not, in the court's view, alter this conclusion. Otherwise, Tuccillo could potentially be in violation of Geisha's rights in the JAPONAIS mark today, and tomorrow be able to enforce that mark against Geisha. The court rejects such a bizarre outcome.

Geisha has expressed confidence that it will be successful in a cancellation proceeding before the Trademark Trial and Appeal Board, an outcome which would clearly have bearing on the scope of its own rights in the JAPONAIS mark. At this time, however, Geisha "should not be permitted to obtain an injunction against [Tuccillo's] use which would have the effect of preventing [Tuccillo] from completing the registration process." 3 McCarthy § 19:29. The court therefore cannot hold as a matter of law that Tuccillo has no rights in the mark and infringed Plaintiff's trademark rights when he opened his restaurant pursuant to his ITU application.

## **CONCLUSION**

Plaintiff's motion for summary judgment on Count I [99] is denied.

ENTER:

Dated: March 13, 2009         _____

REBECCA R. PALLMEYER
United States District Judge